# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| BRENDA L. RHODES and STEPHEN T. RHODES, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| FORD MOTOR COMPANY, | |
| Defendant. | |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................1

II.    JURISDICTION AND VENUE ..........................................................4

III.   PARTIES .............................................................................................5

    A.     Plaintiffs .................................................................................5

    B.     Defendant ................................................................................6

    C.     Super Duty Truck Passenger Cab Roof Defect.......................6

    D.     Defendant Touted Reliability, Quality, and Safety in Its
         Marketing and Advertising......................................................10

    E.     Defendant's Knowledge of the Defect and Associated
         Safety Risk ..............................................................................12

         1.     Defendant Has Known that Roof Collapse Poses a
              Serious Safety Risk for Over 55 Years..........................14

         2.     Defendant Designed a Safer Roof for the Class Vehicles
              in 2005, But Did Not Utilize the Safer Roof Design in
              the Class Vehicles ..........................................................15

         3.     Defendant Knew About the Defect from its Internal
              Testing and Assessments ...............................................16

         4.     Defendant Also had Knowledge of the Defect Based on
              Personal Injury Lawsuits................................................17

IV.    TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL.........17

V.     CLASS ACTION ALLEGATIONS ...................................................19

VI.    CLAIMS FOR RELIEF .....................................................................23

VII.   PRAYER FOR RELIEF .....................................................................44

VIII.  DEMAND FOR JURY TRIAL ..........................................................45

i

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct, and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.    INTRODUCTION

1.    Plaintiffs Brenda L. Rhodes and Stephen T. Rhodes ("Plaintiffs") bring this class action against Ford Motor Company ("Defendant"), individually and on behalf of all persons or entities in the United States who purchased and own a Class Vehicle (defined below), asserting claims for fraud by omission/fraudulent concealment, negligent misrepresentation, unjust enrichment, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, and violations of the Texas Deceptive Trade Practices Act on behalf of the Classes (defined below).

2.    The affected vehicles include model year 1999-2016 Ford Super Duty F-Series trucks (including F-250, F-350, F-450, and F-550 vehicles) designed, manufactured, marketed, distributed, sold, warranted, and/or serviced by Defendant (the "Class Vehicles".)

3.    The Class Vehicles suffer from a defect wherein the truck cab roof construction lacks the structural integrity to support the weight of the vehicle in a

---

[1] Counsel's investigation includes an analysis of publicly available information and Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

rollover accident, which can result in catastrophic crushing damage to both the passenger module and to any passengers inside during such an accident (the "Roof Defect" and "Defect".)

4.     The Roof Defect is inherent in the design of the vehicle.

5.     The Defect poses significant safety risks to Plaintiffs and members of the Classes when Class Vehicles experience a rollover accident. The roof of the cab cannot support the weight of the vehicle, which crushes the roof down to the level of the vehicle's body. The passengers are thus vulnerable to severe injury and even death as the roof deforms, compacting itself and the passengers into the body of the vehicle. The Defect has resulted in numerous incidences of passenger injury and death.

6.     The Roof Defect is not new to Defendant. In 2005, Defendant designed a passenger cab roof for Super Duty Vehicles to withstand more weight and provide significantly increased roof crush resistance, but did not implement the design into its manufacturing process until 2017.

7.     Despite being sued at least 162 times in relation to rollover, roof crush, and/or roof failure of the Class Vehicles, Defendant knowingly, actively, and affirmatively omitted and/or concealed the existence of the Defect to increase profits by selling additional Class Vehicles. Knowledge and information regarding the Defect and the associated safety risk was in the exclusive and superior

possession of Defendant and its dealers, and was not provided to Plaintiffs and members of the Classes, who could not reasonably discover the Defect through due diligence. Based on pre-production testing, design failure mode analysis, and personal injury lawsuits, *inter alia*, Defendant was aware of the Defect in the Class Vehicles and fraudulently concealed the Defect from Plaintiffs and members of the Classes.

8.      Notwithstanding this knowledge, Defendant continued selling defective vehicles, has failed to disclose the existence of the Defect to Plaintiffs and members of the Classes, has not issued a recall, and has not remedied the issue and/or compensated Class Vehicle owners for the material defect. Rather, Defendant wrongfully and intentionally concealed the Defect from Plaintiffs and members of the Classes.

9.      No reasonable consumer expects to purchase a vehicle with a concealed defect that presents a potentially catastrophic danger to the vehicle and its occupants. The defect is material to Plaintiffs and members of the Classes because when they purchased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would protect them in the event of a rollover crash. Had Defendant disclosed the Defect, Plaintiffs and members of the Classes would not have purchased the Class Vehicles, or would have paid less for their vehicles.

10.     Plaintiffs and the Class Members assert claims against Defendant for fraudulent concealment, negligent misrepresentation, unjust enrichment, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., and for violations of the Texas Deceptive Trade Practices Act.

11.     Thus, as a direct result of Defendant's unlawful conduct, Plaintiffs and members of the Classes have been harmed and are entitled to, *inter alia*, damages including: repair and/or replacement of the damaged components; damages for the diminished value of their vehicles; compensatory, statutory, and punitive damages; attorneys' fees; costs; restitution; and/or injunctive and declaratory relief.

## II.     JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, the members of the Classes (as defined below) are citizens of states different from Defendant, and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendant is a citizen. This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by

virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

13. Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b), and (c) because: Defendant maintains operational facilities in this District; a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendant conducts a substantial amount of business in this District; and Defendant is headquartered in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in the District, and venue is proper.

## III. PARTIES

### A. Plaintiffs

14. Plaintiff Brenda L. Rhodes is a citizen of the State of Texas and resides in Lufkin, Texas. Plaintiff Brenda L. Rhodes purchased a new 2013 Ford Super Duty F-250 from an authorized Ford dealer in Texas for personal, family, or household purposes.

15. Plaintiff Stephen T. Rhodes is a citizen of the State of Texas and resides in Lufkin, Texas. Plaintiff Stephen T. Rhodes purchased a new 2011 Ford Super Duty F-350 from an authorized Ford dealer in Texas for personal, family, or household purposes.

**B.      Defendant**

16.      Defendant Ford Motor Company ("Ford") is a Delaware corporation, with its corporate headquarters located at 1 American Road, Dearborn, Michigan.

17.      Ford designs, engineers, manufactures, markets, and/or sells vehicles throughout the United States through its network of authorized dealers. Ford engages in interstate commerce by selling vehicles through its authorized dealers, located in every state of the United States, including within this District.

18.      At all times relevant to this action, Ford Motor Company, and/or its agents, manufactured, distributed, sold, leased, and warranted the Class Vehicles containing the defect described herein, throughout the United States. Defendant developed and disseminated the owner's manuals and warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

19.      Upon information and belief, at all times relevant to this action, Defendant made decisions related to advertisement, marketing, maintenance schedules, sales, warranties, and recalls of the Class Vehicles at its Dearborn, Michigan headquarters, which is located within this District.

**C.      Super Duty Truck Passenger Cab Roof Defect**

20.      The Class Vehicles are constructed around a steel frame. This frame is intended to maintain the form and structure of the vehicle and to keep the

6

occupants of the vehicle safely ensconced within the passenger cab compartment, in the event of an accident.

21.    Over the years, Ford's customers have experienced multiple incidences of rollover crashes and resultant fatalities in Class Vehicles. And yet, Ford continued to produce vehicles throughout the Class Period which were vulnerable to these known dangers due to the Defect, despite having a better design available.

22.    The Defect compromises the comfort, safety, and enjoyment of the Class Vehicles, and unnecessarily exposes drivers and passengers to risks of catastrophic injury or death.

23.    On information and belief, the Defect results from the poor design and manufacturing of the vehicle; this includes the use of materials in the vehicle's body structure that are woefully inadequate for their intended purpose, and reliance on testing standards that are only partially applicable to actual events.

24.    The frame strength of the Class Vehicles is not sufficient to protect the occupants of the vehicle in the event of a rollover accident. Often, in a rollover accident, the vehicle is subjected to bludgeoning forces on all sides and from multiple angles as the vehicle rolls, deforming, weakening, and ultimately crushing the structure within. Dozens of disastrous incidences over the years have demonstrated that these forces are too much for the Class Vehicles to withstand.

25.    To date, Ford has not published any repair guidelines or Technical Service Bulletins that would adequately rectify the Defect, nor has Ford issued any recalls related to the Defect. Ford's ineffectual measures have not addressed the Defect in a manner that would actually prevent the roof from experiencing a crush in a rollover accident, rendering the Class Vehicles dangerously susceptible to safety failures, and leaving Class members vulnerable to significant physical risk and death.

26.    In 2005, the National Highway Traffic Safety Administration ("NHTSA") proposed amending its standards for vehicle roof strength; NHTSA proposed a requirement for vehicle roofs to be able to withstand forces up to 2.5x the weight of the vehicle.[2]

27.    In 2006, Ford publicly stated that it would improve and enhance the roof strength of its trucks and SUVs, including the F-250. Defendant promised to produce vehicle roofs that could support approximately 3 to 3.5 times the weight of the vehicle.[3] This new design would have been an improvement over the proposed NHTSA standard.

28.    However, NHTSA did not implement its new standards for roof strength until four years later, in 2009. Furthermore, NHTSA carved out

---

[2] Ex. A, *Ford to Improve Roof Strength on Some Vehicles*, NBC NEWS (Dec. 5, 2006, 5:51PM), https://www.nbcnews.com/id/wbna16062068.
[3] *Id.*

8

exceptions for vehicles weighing over 6,000 pounds, which included all of the Class Vehicles. These vehicles (and the Class Vehicles) continued to follow the old roof strength standard of 1.5 times the weight of the vehicle.

29.     Despite previously announcing its intent to improve and enhance roof strength, and despite the new standards set out by NHTSA for lighter vehicles, Ford did not make any changes to the design of Class Vehicles until 2017.

30.     In 2017, Ford overhauled the design of its Super Duty vehicles by replacing the steel body frame with an aluminum alloy structure, thus implementing the design improvements that they had developed over ten years previously.[4] This frame is lighter and stronger, and had already been implemented in Ford's F-150 trucks. While this redesign will protect occupants of newer Ford Super Duty F-Series trucks (*i.e.*, model years 2017 and forward) into the future, it does not address the Defect present in the Class Vehicles.

31.     The Defect was inherent in each of the Class Vehicles and was present at the time of sale.

32.     Ford knew, or should have known, about the Defect present in the Class Vehicles, along with the corresponding safety risk, and concealed this information from Plaintiffs and Class members at the time of sale and thereafter.

---

[4] Ex. B, Nora Eckert, *Roof Strength on Older Ford Trucks Called Into Question by $1.7 Billion Jury Verdict*, WALL STREET JOURNAL (Aug. 22, 2022, 9:40 AM), https://www.wsj.com/articles/ford-faces-1-7-billion-verdict-in-fatal-rollover-of-f-250-pickup-11661033662.

33.     If Plaintiffs and members of the Classes had known about the Defect at the time of sale, Plaintiffs and members of the Classes would not have purchased the Class Vehicles or would have paid less for them.

34.     As a result of their reliance on Defendant's omissions, owners of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Additionally, as a result of the Defect, Plaintiffs and members of the Classes were harmed and suffered actual damages in that the Class Vehicles are defective, that they overpaid for defective vehicles, and that the Class Vehicles' roof structures increase their chances of serious injury in the event of a rollover.

### D.     Defendant Touted Reliability, Quality, and Safety in Its Marketing and Advertising

35.     Defendant engages in direct marketing to consumers, including Plaintiffs and members of the Classes, through television and radio commercials, print advertising, and the publication of vehicle brochures, which are distributed through its network of authorized Ford dealerships, in order to induce consumers to purchase its vehicles. This comprehensive advertising campaign is ongoing.

36.     Through this direct advertising campaign, Defendant purports to build reliable, high quality, and safe vehicles. Defendant's customers are well aware of Ford's slogan it uses to describe its vehicles—"Built Ford Tough." Defendant markets its brand as a tough, versatile vehicle, designed to operate safely and effectively in virtually any situation.

10

37.     Regarding its Super Duty vehicle line, Defendant has emphasized the strength and toughness of its product. In a section of its website devoted to the durability of the Super Duty line, Defendant leads with the headline "BUILT FOR STRENGTH. BUILT TO LAST." Furthermore, on the same page, Defendant states "Built Ford Tough isn't just a slogan. It's an attitude that has produced America's premier line of rugged and dependable pickups for 44 straight years. It's this attitude that leads the Super Duty to stand out from its competition."[5] At all relevant times, Defendant has intentionally represented Super Duty vehicles to be sturdy and reliable, able to withstand the harshest handling with no loss of safety, form, or function.

38.     While marketing the Class Vehicles in product brochures, Ford repeatedly touted that the Class Vehicles were "Built Ford Tough" and safe.[6]

39.     For example, in its 2003 Super Duty brochure, Ford described the F-350 Super Duty as "tough as can be."[7]

40.     Similarly, Ford's 2006 F-250/F-350 product brochure touted "the legendary toughness built into every Super Duty."[8]

---

[5] Ex. C, *Durability*, FORD, https://www.ford.com/trucks/super-duty/features/durability/ (last visited Sept 2, 2022).
[6] *Id*.
[7] Ex. D, Ford's *F-250/F-250 Super Duty* brochure (2003).
[8] Ex. E, Ford's *F-250/F-350 Super Duty* brochure (2006).

41.   In its 2009 Super Duty brochure, Ford referred to itself as "the toughest name in trucks."[9]

42.   In its 2012 Super Duty brochure, Ford assured customers that they could "take comfort in serious safety standards."[10]

43.   In its 2015 Super Duty brochure, Ford boasted that "Tough Keeps Getting Tougher."[11]

44.   Defendant has made such claims while knowing that it was selling millions of Class Vehicles burdened with the Defect and corresponding safety risk. These claims help Defendant to conceal the Defect's existence in order to sell more vehicles and avoid the financial responsibility to rectify the defective condition and ensure the safety of its customers.

**E.   Defendant's Knowledge of the Defect and Associated Safety Risk**

45.   As set forth below, Ford has long been aware of the Roof Defect present in its Class Vehicles.

46.   Defendant fraudulently, intentionally, negligently, and/or recklessly omitted and concealed, from Plaintiffs and members of the Classes, the Defect in the Class Vehicles, even though Defendant knew, or should have known, of the Defect in Class Vehicles.

---

[9] Ex. F, Ford's *09 F-Series Super Duty* brochure.
[10] Ex. G, Ford's *2012 Super Duty* brochure.
[11] Ex. H, Ford's *2015 Super Duty* brochure.

47.     Knowledge and information regarding the Defect were in the exclusive and superior possession of Ford and its dealers, and that information was not provided to Plaintiffs and members of the Classes. Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, and personal injury lawsuits, *inter alia*, Defendant was aware (or should have been aware) of the Defect in the Class Vehicles and fraudulently concealed the Defect and safety risk from Plaintiffs and members of the Classes.

48.     Defendant knew, or should have known, that the Defect and the associated safety risk was material to owners of Class Vehicles and was not known, or reasonably discoverable, by Plaintiffs and members of the Classes before they purchased Class Vehicles or within the applicable warranty periods.

49.     Notwithstanding Defendant's exclusive and superior knowledge of the Defect, Defendant failed to disclose the Defect to consumers at the time of purchase of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the Defect. Defendant intentionally concealed that the Defect presents a safety risk to consumers, including Plaintiffs and members of the Classes, and the public.

50.     While designing, manufacturing, engineering, and testing Class Vehicles in advance of the vehicles' release, Ford would have gained comprehensive and exclusive knowledge about the structural and component

vulnerabilities of the Class Vehicles. Ford would have learned, during the design and pre-production stages of the Class Vehicles, of the structural strength and crush threshold of the passenger cab roof, the issues that could arise therefrom, and the dangerous operation of the malfunctioning components.

51.     Adequate pre-release analysis of the design, engineering, and manufacture of the Class Vehicles would have revealed to Ford that the design of the vehicle was defective and that the passenger cab roof was structurally weak, and vulnerable to rollover crushes.

### 1.     Defendant Has Known that Roof Collapse Poses a Serious Safety Risk for Over 55 Years

52.     Ford has known for over 55 years that roof collapse can lead to serious and even fatal injury for vehicle occupants.

53.     In 1966, Ford's Safety Office issued a report ("the 1966 Safety Office Report") that concluded that the roofs of Ford vehicles were capable of "completely crushing down [] in one or more areas" in a situation that was "non-survivable for occupants."

54.     This same report recognized that "[s]tronger roofs crush less, reducing the risk that people will be injured by contact with the roof itself. Stronger roofs also can prevent occupants, especially those who are using safety belts, from being ejected through windows, windshields, or doors that may have broken or opened because the roof has deformed."

14

55.    On July 2, 1987, Ford's Light Truck Safety Design Strategy recognized in its 1987 Safety Design Guideline that "[a] significant number of accidents result in roof damage" and that "[p]eople are injured by roof collapse. The total number of nationwide deaths and injuries cannot be estimated but it is a significant number." The same guideline recognized that "in many accident situations is rollover is inevitable" and noted that "the focus shifts to the roof structure to minimize the risk of restrained occupant injury."

### 2.    Defendant Designed a Safer Roof for the Class Vehicles in 2005, But Did Not Utilize the Safer Roof Design in the Class Vehicles

56.    In 2004, Ford began its Enhanced Roof Strength Project ("ERSP") to design a stronger and safer roof for its Super Duty vehicles. By 2005, the ERSP had designed a roof for the Class Vehicles that could withstand up to 55,000 pounds of force.

57.    Instead of implementing the stronger roof into the Class Vehicles, Ford concealed its existence and continued manufacturing and selling Class Vehicles with the weaker, dangerous roof design, for another 12 years.

58.    In 2009, Ford began using the safer ERSP roof on its F-150 trucks, but not in the Class Vehicles.

59.    Upon redesigning the F-150's roof, Ford boasted about the new roof's safety benefits. For example, in its product brochure for the 2009 F-150, Ford

touted the F-150's "high-strength safety cage structure" and the fact that the redesigned F-150 was the "safest F-150 yet."

60.    It was only in 2017 that Ford finally strengthened the roofs of its Super Duty trucks.

### 3.    Defendant Knew About the Defect from its Internal Testing and Assessments

61.    On information and belief, at the time that the Class Vehicles went into production, Ford had two internal safety standards applying to vehicle roofs: (1) the roof needed a strength-to-weight ratio of 1.8 and (2) the roof needed to be able to withstand at least 10,500 pounds of force.

62.    The Class Vehicles fail to comply with either of Ford's roof safety standards. The Class Vehicles' roofs have a strength-to-weight ratio of 1.1, falling far short of the 1.8 standard, and they can withstand only 8,900 pounds of force.

63.    Ford's own internal testing revealed that the Class Vehicles had the least roof crush resistance, measured by the strength-to-weight ratio, of all of Ford's vehicle offerings and fell far short of Ford's internal standard of a 1.8 strength to weight ratio:



### 4. Defendant Also had Knowledge of the Defect Based on Personal Injury Lawsuits

64.     Beginning in 2000, plaintiffs began to sue Ford in connection with injuries resulting from the dangerously defective roofs in the Class Vehicles.

65.     Ford was sued in at least 162 cases where plaintiffs alleged injury relating to rollover, roof crush, and/or roof failure on the Class Vehicles. *See* Exhibit I.

## IV.   TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

66.     Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of the Roof Defect and the misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiffs and

17

members of the Classes were deceived regarding the Class Vehicles and could not reasonably discover the Roof Defect or Defendant's deception with respect to the Roof Defect until August 21, 2022, when the national media reported that a Georgia jury had awarded $1.7 billion in punitive damages in connection with a rollover of a 2002 Ford F-250 that resulted in roof collapse and the fatalities of the two vehicle occupants.

67.    Plaintiffs and members of the Classes did not discover, and did not know of, any facts that would have caused a reasonable person to suspect that Defendant was concealing a defect, and/or that the Class Vehicles contained the Defect and corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiffs and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiffs and members of the Classes could not have discovered, through the exercise of reasonable diligence, the existence of the Defect or that Defendant was concealing the Defect.

68.    At all times, Defendant is and was under a continuous duty to disclose to Plaintiffs and members of the Classes the true standard, quality, and grade of the Class Vehicles and to disclose the Defect and corresponding safety risk.

69.    Defendant knowingly, actively, and affirmatively concealed the facts alleged herein. Plaintiffs and members of the Classes reasonably relied on Defendant's knowing, active, and affirmative concealment.

70.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment, and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## V.     CLASS ACTION ALLEGATIONS

71.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(2) and/or (b)(3) on behalf of the following Class and Sub-Class:

> **Nationwide Class**: All persons or entities in the United States who purchased and own a Class Vehicle (the "Nationwide Class" or "Class");

> **Texas Sub-Class**: All persons or entities who purchased and own a Class Vehicle in the State of Texas (the "Texas Sub-Class");

72.     Excluded from the Class and Sub-Class are Defendant and its parents, subsidiaries, and corporate affiliates. Plaintiffs reserve the right to revise the definition of the Class and Sub-Class based upon subsequently discovered information and reserve the right to establish additional sub-classes where appropriate. The Class and Sub-Class are collectively referred to herein as the "Classes."

73.   The Classes are so numerous that joinder of all members is impracticable. Plaintiffs believe that there are at least thousands of proposed members of the Classes throughout the United States.

74.   Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

- Whether the Class Vehicles contain the Defect;

- Whether the Defect is a design defect and/or a defect in material, manufacturing, and/or workmanship;

- Whether the Defect in the Class Vehicles presents a safety risk;

- Whether and when Defendant knew or should have known about the Defect;

- Whether Defendant knew or should have known that the Defect in Class Vehicles presents a safety risk;

- Whether Defendant had a duty to disclose the Defect;

- Whether Defendant breached its duty to disclose the Defect;

- Whether Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts concerning the standard, quality, or grade of the Class Vehicles and/or the Defect;

- Whether Defendant negligently omitted material facts concerning the standard, quality, or grade of the Class Vehicles and/or the Defect;

- Whether Defendant made material omissions concerning the standard, quality, or grade of the Class Vehicles and/or the Defect;

- Whether members of the Classes would pay less for a Class Vehicle if Defendant, at the time of purchase, disclosed the Defect;

- Whether members of the Classes would have purchased a Class Vehicle if Defendant, at the time of purchase, disclosed the Defect;

- Whether Defendant actively concealed material facts from Plaintiffs and members of the Classes in order to, *inter alia*, sell more Class Vehicles;

- Whether Defendant breached its express and/or implied warranties to Plaintiffs and members of the Classes;

- Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

- Whether Defendant violated the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*; and

- Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted.

75.    Plaintiffs' claims are typical of the claims of the Classes that Plaintiffs seek to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same unlawful actions and conduct by Defendant.

76.    Plaintiffs are willing and prepared to serve the Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to, or in conflict with, the interests of the other members of the Classes.

77.    Plaintiffs' interests are co-extensive with, and are not antagonistic to, those of absent members within the Classes. Plaintiffs will undertake to represent

and protect the interests of absent members within the Classes and will vigorously prosecute this action.

78.     Plaintiffs have engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action and will assert and protect the rights of, and otherwise represent, Plaintiffs and absent members of the Classes.

79.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiffs know of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

80.     Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

81.     The Classes may also be certified under Rule 23(b)(2) because Defendant has acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

82.     The interest of members within the Classes individually controlling the prosecution of separate actions is theoretical and not practical. The Classes

have a high degree of similarity, and are cohesive, and Plaintiffs anticipate no difficulty in the management of this matter as a class action.

83.     The nature of notice to the proposed Classes is contemplated to be by direct mail upon certification of the Classes or, if such notice is not practicable, by the best notice practicable under the circumstance including, *inter alia*, email, publication in major newspapers, and/or on the internet.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### Breach of Express Warranty
### (On behalf of the Nationwide Class and the Texas Sub-Class)

84.     Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

85.     Plaintiffs bring this count on behalf of themselves and on behalf of all Class members.

86.     Defendant marketed the Class Vehicles as safe, reliable vehicles. Such representations formed the basis of the bargain in Plaintiffs' and members of the Classes' decisions to purchase the Class Vehicles.

87.     Defendant is and was at all relevant times a merchant and seller of motor vehicles within the meaning of the Uniform Commercial Code.

88.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

23

89.     Defendant is and was at all relevant times merchants with respect to motor vehicles within the meaning of Tex. Bus. & Com. Code Ann.§ 2.104.

90.     In connection with the purchase of each of the Class Vehicles, Defendant provides New Vehicle Limited Warranty coverage for the Class Vehicles for 3 years or 36,000 miles which includes all components other than normal wear and maintenance items. Under the warranties provided to Plaintiffs and members of the Classes, Defendant promised to repair or replace covered components arising out of defects in materials and/or workmanship, including the Defect, at no cost to owners and lessees of the Class Vehicles and within a reasonable time. As alleged herein, Defendant breached these warranties.

91.     Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Classes purchased their Class Vehicles.

92.     Plaintiffs and members of the Classes experienced the existence of the Defect within the warranty periods, but had no knowledge of the existence of the defect and associated safety hazard, which were known and concealed by Defendant. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Classes that the Class Vehicles contained the Defect and failed to provide a suitable remedy or repair, free of charge, within a reasonable time.

93.     Defendant breached the express warranty promising to repair and correct a manufacturing defect, or defect in materials or workmanship of any parts it supplied.

94.     On information and belief, Defendant has not suitably repaired or replaced the Defect free of charge for Plaintiffs and members of the Classes despite the existence of the Defect in the Class Vehicles at the time of sale.

95.     Defendant was provided notice of the Defect by numerous personal injury lawsuits and through its own testing. Affording Defendant a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here because Defendant has known of and concealed the Defect and has failed to provide a suitable repair or remedy of the Defect, free of charge, within a reasonable time.

96.     Any attempt by Defendant to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the defect. The limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and the members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining

power existed between Defendant and members of the Classes, and Defendant knew or should have known, that the Class Vehicles were defective at the time of sale and that the Defect posed a safety hazard.

97.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Classes whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

98.    Defendant knew that the Class Vehicles were inherently defective and did not conform to its warranties, and Plaintiffs and members of the Classes were induced to purchase the Class Vehicles under false and/or fraudulent pretenses.

99.    As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Classes have been damaged in an amount to be determined at trial.

100.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiffs and members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Classes of the purchase price of all Class Vehicles currently owned, and for such other incidental and consequential damages as allowed.

**COUNT II**
**Violation of the Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. § 2301,** *et seq.*
**(On behalf of the Nationwide Class and the Texas Sub-Class)**

101. Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

102. Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class members.

103. The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

104. Plaintiffs and Class members are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

105. Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

106. Defendant's express warranty is a "written warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).

107. The MMWA provides a cause of action for any customer who is damaged by the failure of a warrantor to comply with a written or implied warranty. *See* 15 U.S.C. § 2310(d)(1).

108. Defendant provided Plaintiffs and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). Specifically, Defendant provided a warranty for 3 years or 36,000 miles which

27

includes all components other than normal wear and maintenance items. Under warranties provided to members of the Classes, Defendant promised to repair or replace covered defective components arising out of defects in materials and/or workmanship, including the Defect, at no cost to owners and lessees of the Class Vehicles. As alleged herein, Defendant breached these warranties.

109.    The Defect was present in the Class Vehicles belonging to Plaintiffs and Class members within the warranty periods. Ford, however, failed to inform Plaintiffs and members of the Classes of the existence of the Defect and associated safety hazard, and failed to provide a suitable remedy or repair of the Defect, free of charge, within a reasonable time.

110.    Any attempt by Defendant to disclaim or limit its express or implied warranties is unconscionable and unenforceable here. Specifically, Defendant's warranty limitations are unenforceable because it knowingly sold a defective product without informing consumers about the defect. The limits contained in Defendant's warranty periods are also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these limitations, the terms of which unreasonably favored Ford. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the

Class Vehicles' passenger cab roofs were defective at the time of sale and that they posed a safety risk.

111. The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

112. Defendant breached these warranties by failing to disclose, and fraudulently concealing, information regarding the standard, quality, or grade of the Class Vehicles and the presence of the Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing, and/or workmanship that fails to operate as represented by Ford, and presents a safety risk.

113. Affording Defendant a reasonable opportunity to cure its breach of warranties would be unnecessary and futile. At the time of sale of each Class Vehicle, and all relevant times thereafter, Defendant knew, or was reckless in not knowing, of the material omissions concerning the standard, quality, or grade of the Class Vehicles and the presence of the Defect, but failed to repair or remedy and/or disclose the defect. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure, and/or afford Defendant a reasonable opportunity to cure its breach of warranties, is excused and thereby deemed satisfied.

114.   Plaintiffs and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendant. Thus, Plaintiffs and members of the Classes have not re-accepted their Class Vehicles by retaining them.

115.   The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

116.   Plaintiffs, individually and on behalf of members of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT III
### Breach of Implied Warranty of Merchantability
### (On behalf of the Nationwide Class and the Texas Sub-Class)

117.   Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

118.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class members.

119.   Plaintiffs and members of the Classes purchased the Class Vehicles from Ford by and through Ford's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when

bought from a third party. At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Ford knew, or had reason to know, of the specific use for which the Class Vehicles were purchased.

120.   Defendant is and was at all relevant times a "merchant" and "seller" of motor vehicles within the meaning of the Uniform Commercial Code.

121.   The Class Vehicles are and were at all relevant times "goods" within the meaning of the Uniform Commercial Code.

122.   Defendant is and was at all relevant times merchants with respect to motor vehicles within the meaning of Tex. Bus. & Com. Code Ann.§ 2.104.

123.   Defendant impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

124.   The Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and were, and are not, fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect—the Defect—(at the time of sale and thereafter), and present an undisclosed safety hazard to drivers and occupants. Thus, Defendant breached its implied warranty of merchantability.

125.   Defendant cannot disclaim its implied warranty as it knowingly sold a defective product.

126.   Defendant was provided notice of the Defect by numerous personal injury lawsuits and through its own testing. Affording Defendant a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendant has known of and concealed the Defect and, on information and belief, has refused to rectify the Defect, free of change, within a reasonable time.

127.   As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

128.   Any attempt by Defendant to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendant's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect. The limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Classes. Among other things, Plaintiffs and members of the Classes did not determine these limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew, or should have known, that the Class Vehicles were defective at the time of sale and that the Defect posed a safety hazard.

129.   Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendant's conduct described herein.

130.   The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment, and the terms of the express warranty.

## COUNT IV
### Fraudulent Concealment
### (On behalf of the Nationwide Class and the Texas Sub-Class)

131.   Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

132.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class members.

133.   Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the presence of the Defect in the Class Vehicles, with the intent that Plaintiffs and members of the Classes rely on Defendant's omissions. As a direct result of Defendant's fraudulent conduct, members of the Classes have suffered actual damages.

134.   Defendant knew (at the time of sale and thereafter) that the Class Vehicles contained the Defect, concealed the Defect, and never intended to repair

or remedy the Defect during the warranty periods. To date, Defendant has not provided Plaintiffs or members of the Classes with a repair or remedy that will eliminate the Defect.

135.   Defendant owed a duty to disclose the Defect and its corresponding safety hazard to Plaintiffs and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the Defect. Rather than disclose the Defect, Defendant intentionally and knowingly concealed, suppressed, and/or omitted material facts including the standard, quality, or grade of the Class Vehicles and the presence of the Defect, to sell additional Class Vehicles and avoid the cost of repair or replacement.

136.   The fact that the Defect prevents the passenger cab roof from supporting the full weight of the vehicle in a rollover accident is material because Plaintiffs and members of the Classes had a reasonable expectation that the vehicles would not expose them and other vehicle occupants to such a safety hazard. No reasonable consumer expects a vehicle to be designed, manufactured, and assembled such that the passenger cab roof would be unable to support the weight of the vehicle in a rollover accident, exposing the passengers to significant risk of catastrophic injury or death in such an occurrence.

137.   Plaintiffs and members of the Classes would not have purchased the Class Vehicles but for Defendant's omissions and concealment of material facts

regarding the nature and quality of the Class Vehicles and existence of the Defect, or would have paid less for the Class Vehicles.

138.   Defendant knew its concealment and suppression of material facts were false and misleading and knew the effect of concealing those material facts. Defendant knew its concealment and suppression of the Defect would sell more Class Vehicles and would discourage Plaintiffs and members of the Classes from seeking replacement or repair of the Defect. Further, Defendant intended to induce Plaintiffs and members of the Classes into purchasing or leasing the Class Vehicles and to discourage them from seeking replacement or repair of the Defect, in order to decrease costs and increase profits.

139.   Defendant acted with malice, oppression, and fraud.

140.   Plaintiffs and members of the Classes reasonably relied upon Defendant's knowing concealment and omissions. As a direct and proximate result of Defendant's omissions and active concealment of material facts regarding the Defect and associated safety hazard, Plaintiffs and members of the Classes have suffered actual damages in an amount to be determined at trial.

**COUNT V**
**Negligent Misrepresentation**
**(On behalf of the Nationwide Class and the Texas Sub-Class)**

141.   Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

142.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class members.

143.   Defendant owed a duty to disclose the Defect and its corresponding safety risk to Plaintiffs because Defendant possessed superior and exclusive knowledge regarding the Defect and associated risks.

144.   Defendant negligently omitted material facts including the standard, quality, and grade of the Class Vehicles and/or the presence of the Defect in the Class Vehicles. As a direct result of Defendant's negligent conduct, Plaintiffs have suffered actual damages.

145.   The Defect is material to Plaintiffs because Plaintiffs had a reasonable expectation that the vehicles would not contain a defect that exposes them and other vehicle occupants to a safety risk. No reasonable consumer expects a vehicle to contain a concealed defect in design, manufacture, materials, or workmanship, such as a passenger cab roof that is unable to support the weight of the vehicle in a rollover accident, exposing the passengers to significant risk of catastrophic injury or death.

146.   Plaintiffs would not have purchased the Class Vehicle but for Defendant's negligent omissions of material facts regarding the nature and quality of the Class Vehicles and/or the existence of the Defect and corresponding safety

risk, or would have paid less for the Class Vehicles. Plaintiffs justifiably relied upon Defendant's negligent omissions of materials facts.

147.   As a direct and proximate result of Defendant's negligent omissions or material facts regarding the standard, quality, or grade of the Class Vehicles and/or the presence of the Defect and corresponding safety risk, Plaintiffs have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## COUNT VI
## Unjust Enrichment
## (On behalf of the Nationwide Class and the Texas Sub-Class)

148.   Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

149.   Plaintiffs bring this cause of action on behalf of themselves and on behalf of all Class members.

150.   Plaintiffs and members of the Classes conferred a benefit on Ford by purchasing the Class Vehicles. Ford was and should have been reasonably expected to provide Class Vehicles free from the Defect and associated safety risks.

151.   Defendant unjustly profited from the sale of the Class Vehicles at inflated prices as a result of its omissions and concealment of the Defect in the Class Vehicles.

152.    As a proximate result of Defendant's omissions and concealment of the Defect in the Class Vehicles, and as a result of Defendant's ill-gotten gains, benefits, and profits, Defendant has been unjustly enriched at the expense of Plaintiffs and members of the Classes. It would be inequitable for Ford to retain its ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

153.    Plaintiffs and members of the Classes are entitled to restitution of the amount of Defendant's ill-gotten gains, benefits, and profits, including interest, resulting from its unlawful, unjust, and inequitable conduct.

154.    Plaintiffs and members of the Classes seek an order requiring Defendant to disgorge its gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT VII
### Violation of Texas Deceptive Trade Practices Act
### Tex. Bus. & Com. Code Ann.§§ 17.41, *et seq*.
### (On behalf of the Texas Sub-Class)

155.    Plaintiffs incorporate by reference and re-allege the allegations contained in the preceding paragraphs of this Complaint.

156.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Texas Sub-Class.

157.    Plaintiffs and the Texas Sub-Class are individuals, partnerships and corporations with assets of less than $25 million (or are controlled by corporations

or entities with less than $25 million in assets). *See* Tex. Bus. & Com. Code Ann.§ 17.41.

158.   The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree," Tex. Bus. & Com. Code Ann. § 17.45(5); Tex. Bus. & Com. Code Ann. § 17.50(a)(3).

159.   Defendant has committed false, misleading, unconscionable, and deceptive acts or practices in the conduct of trade or commerce.

160.   Defendant also violated the Texas DTPA by: (1) representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; (2) representing that they are of a particular standard, quality, and grade when they are not; (3) advertising them with the intent not to sell them as advertised; and (4) failing to disclose information concerning them with the intent to induce consumers to purchase them.

161.   In the course of its business, Defendant failed to disclose and actively concealed the dangers and risks posed by the Class Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive.

162.   Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Class Vehicles.

163.   As alleged above, Defendant has known of the Roof Defect since at least 2000, including through lawsuits and internal testing. Prior to manufacturing the Class Vehicles, Defendant knew or should have known of the Roof Defect, because Ford's own testing and safety guidelines indicated that the Class Vehicles' roofs were unable to support the weight of the vehicle in a rollover accident, exposing the passengers to significant risk of catastrophic injury or death.

164.   By failing to disclose and by actively concealing the Roof Defect in the Class Vehicles by marketing them as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that values safety, Defendant engaged in unfair or deceptive business practices in violation of the Texas DTPA.

165.   Defendant deliberately withheld the information about the propensity of the Class Vehicles' roofs to crush in the event of a rollover in order to ensure that consumers would purchase the Class Vehicles.

166.   In the course of Defendant's business, it willfully failed to disclose and actively concealed the dangerous risks posed by the Defect discussed above.

167.   Defendant compounded the deception by repeatedly asserting that the Class Vehicles were safe, reliable, and of high quality, and by claiming to be reputable manufacturers that value safety.

168.   Defendant's unfair or deceptive acts or practices, including these concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Texas Sub-Class, about the true safety and reliability of Class Vehicles, the quality of Defendant's brands, and the true value of the Class Vehicles.

169.   Defendant intentionally and knowingly misrepresented material facts regarding the Class Vehicles with an intent to mislead Plaintiffs and the Texas Sub-Class.

170.   Defendant knew or should have known that its conduct violated the Texas DTPA.

171.   As alleged above, Defendant made material statements about the safety and reliability of the Class Vehicles that were either false or misleading. Defendant's representations, omissions, statements, and commentary have included selling and marketing the Class Vehicles as safe and reliable, despite their knowledge of the Roof Defect or their failure to reasonably investigate it.

172.   To protect its profits and to avoid remediation costs and a public relations nightmare, Defendant concealed the dangers and risks posed by the Class Vehicles and their tragic consequences, and allowed unsuspecting purchasers to continue to buy the Class Vehicles, and allowed them to continue driving highly dangerous vehicles.

173.   Defendant owed Plaintiffs and the Texas Sub-Class a duty to disclose the true safety and reliability of the Class Vehicles because Defendant:

    a.   Possessed exclusive knowledge of the dangers and risks posed by the foregoing;

    b.   Intentionally concealed the foregoing from Plaintiffs and the Texas Sub-Class; and/or

    c.   Made incomplete representations about the safety and reliability of the foregoing generally, while purposefully withholding material facts from Plaintiffs and the Texas Sub-Class that contradicted these representations.

174.   Because Defendant fraudulently concealed the Roof Defect in Class Vehicles, resulting in a raft of negative publicity once the Roof Defect finally began to be disclosed, the value of the Class Vehicles has diminished. In light of the stigma attached to Class Vehicles by Defendant's conduct, they are now worth less than they otherwise would be.

175.   Defendant's failure to disclose and active concealment of the dangers and risks posed by the Roof Defect in the Class Vehicles were material to Plaintiffs and the Texas Sub-Class.

176.   Plaintiffs and the Texas Sub-Class suffered ascertainable loss caused by Defendant's misrepresentations and their failure to disclose material information. Had they been aware of the Roof Defect that existed in the Class Vehicles and Defendant's disregard for safety, Plaintiffs and the Texas Sub-Class either would not have paid as much for their vehicles or would not have purchased them at all. Plaintiffs and the Texas Sub-Class did not receive the benefit of their bargain as a result of Defendant's misconduct.

177.   Defendant's violations present a continuing risk to Plaintiffs, the Texas Sub-Class, and the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

178.   As a direct and proximate result of Defendant's violations of the Texas DTPA, Plaintiffs and the Texas Sub-Class have suffered injury-in-fact and/or actual damage.

179.   Pursuant to Tex. Bus. & Com. Code Ann.§ 17.50(a)(l) and (b), Plaintiffs and the Texas Sub-Class seek monetary relief against Defendants measured as actual damages in an amount to be determined at trial, treble damages

for Defendant's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

180.   For Plaintiffs and the Texas Sub-Class members who wish to rescind their purchases, they are entitled under Tex. Bus. & Com. Code Ann. § 17.50(b)(4) to rescission and other relief necessary to restore any money or property that was acquired from them based on violations of the Texas DTPA.

181.   Plaintiffs and the Texas Sub-Class also seek court costs and attorneys' fees under§ 17.50(d) of the Texas DTPA.

182.   In accordance with Tex. Bus. & Com. Code Ann. § 17.505(a), Plaintiffs' counsel, on behalf of Plaintiffs and the Texas Sub-Class, served Defendant with notices of their alleged violations of the Texas DTPA relating to the Class Vehicles purchased by Plaintiffs and the Texas Sub-Class, and demanded that Defendant correct or agree to correct the actions described therein.

183.   Plaintiffs seek compensatory and monetary damages to which Plaintiffs and the Texas Sub-Class are entitled.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Classes, and award the following relief:

- An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the

representatives of the Classes, and Plaintiffs' counsel as counsel for the Classes;

- An order awarding declaratory relief and enjoining Defendant from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

- Appropriate injunctive and equitable relief;

- A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

- An order awarding costs, restitution, disgorgement, punitive damages, statutory damages, treble damages, and exemplary damages under applicable law, and compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

- An order awarding any applicable statutory and civil penalties;

- An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

- An award of costs, expenses, and attorneys' fees as permitted by law; and

- Such other or further relief as the Court may deem appropriate, just, and equitable.

## VIII. DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

DATED: September 7, 2022

*/s/ E. Powell Miller*

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: (248) 841-2200
Fax: (248) 652-2852
epm@miller.law
ssa@miller.law

Joseph H. Meltzer
Melissa L. Troutner
Ethan J. Barlieb
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
jmeltzer@ktmc.com
mtroutner@ktmc.com
ebarlieb@ktmc.com

***Counsel for Plaintiffs and the***
***Proposed Classes***